UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CITIZENS HEALTH CORPORATION, ]<br>BY: LULA JOURNEY, CHAIR, CITIZENS ]<br>HEALTH CORPORATION BOARD OF ]<br>DIRECTORS, ]<br> ]<br>    Plaintiff, ]<br> ]<br>    vs. ]<br> ]<br>KATHLEEN SEBELIUS, SECRETARY, U. S. ]<br>DEPARTMENT OF HEALTH AND HUMAN ]<br>SERVICES, U. S. DEPARTMENT OF ]<br>HEALTH AND HUMAN, HEALTH RESOURCES ]<br>ADMINSTRATION, JAMES D. MINOR, ]<br>M.D., CHAIR, BOARD OF TRUSTEES OF THE ]<br>HEALTH & HOSPITAL CORPORATION OF ]<br>MARION COUNTY, IN, MATTHEW GUTWEIN, ]<br>EXECUTIVE DIRECTOR, HEALTH & ]<br>HOSPITAL CORPORATION OF MARION ]<br>COUNTY, IN and HEALTH & HOSPITAL ]<br>CORPORATION OF MARION COUNTY, IN, ]<br> ]<br>    Defendants. ] | Case No.: 1:12-cv-0748 SEB - TAB |

**AMENDED
COMPLAINT FOR PRELIMINARY RESTRAINING ORDER
AND FOR TEMPORARY AND PERMANENT INJUCTION**

Citizens Health Corporation, pursuant to the U. S. Constitution, 28 U.S.C. §§1331, 1343 and 1367(a), and the Public Health Service Act (42 U.S.C. § 254(b), *et seq.* ("the Act"), Title III, Section 330, for this cause of action against the said Defendants submits the following:

I. Parties

1. Citizens Health Corporation ("Citizens") is a not-for-profit Indiana corporation with principal corporate and health center offices situated at 1650 N. College Avenue, Indianapolis, IN 46202. Citizens is currently authorized and qualified pursuant to the Act to provide primary healthcare services to a very needy community (catchment area) in Indianapolis, as a Federally Qualified Health Center (FQHC). 42 U.S.C. § 254(b), *et seq.*

Citizens was formed by a group of African-American physicians, members of the Aesulapian Society, in or about 1968, to serve this primarily urban community in which many are at or below the Federal poverty level and are largely minority. Citizens is and has been a grantee or grantee by co-application with HHC, of Section 330 funding since 2002.

2. Lula Journey is the duly elected Chair of the Citizens Health Corporation Board of Directors – Citizens' governing body. She is authorized to pursue this action by vote of her fellow board members and by the powers granted the Board by its bylaws.

3. Defendant Kathleen Sebelius is named in her official capacity as Secretary, U. S. Department Of Health And Human Services ("HHS"). HHS is, among other matters, charged with the administration and regulation of grants made pursuant to the Act. Defendant Sebelius' administrative decision, through HRSA, to terminate grant funding to Citizens is challenged hereby as having denied due process or even an administrative appeal to the Secretary, by Citizens, prior to such termination of Sec. 330 grant funding.

4. Defendant HHS is specifically charged, by the Act, to provide written rules/procedures for the administration of grants authorized by section 330 of the Public Health Service Act, including the supervision, termination and provision of administrative appeal procedures for the resolution of disputes arising during the course of a grant so implemented.

5. HRSA, a division of HHS, is designated by the Secretary and charged with the effectuation, operation, supervision and administrator of the said Section 330 grants, and whose decision to terminate funding to Citizens is challenged as having been made without granting it due process or an administrative appeal to the Secretary prior to such termination of Sec. 330 grant funding.

6. Defendant Health & Hospital Corporation of Marion County ("HHC") is a municipal corporation established pursuant to Indiana Code Section 16-22-8. HHC, as per

statute, operates a division of public health, the Marion County Health Department, and a division of public hospitals - Wishard Health Services.

7.  Defendant James D. Minor, M.D., named in his official capacity, is the Chair of the Board of Trustees Of HHC.  The HHC Board of Trustees is created, authorized and its members appointed pursuant to Indiana Code § 16-22-8, *et seq.*  The HHC Trustees possess and may exercise powers necessary, reasonable and incidental to carrying out its statutory purposes and objectives.

8.  Defendant Matthew Gutwein, named in his official capacity, is the appointed President and Executive Director of HHC having, among other duties, the authority to execute documents, contracts and agreements on behalf of the Corporation. The said Defendant, as President, enjoys such other duties and authority as designated by the HHC Board.

## II.  Nature of Action/Jurisdiction/Venue

9.  This matter involves a controversy over the contractual and due process rights of Citizens as a co-applicant grantee of Section 330 funds with HHC and seeks the grant of injunctive relief and other equitable relief from this Court against HHS/HRSA and HHC, as well as compensatory damages and costs.

The Court's jurisdiction is invoked pursuant to the due process provisions of the U. S. Constitution, 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. § 1391, 28 U.S.C. §1367 and 42 U.S.C. § 254, *et seq.*

The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367(a) as to Plaintiff's state law claims as herein stated.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 94(b)(1) and 1391(e)(1), in as much as the significant events at issue occurred in Marion County, IN.

## III. Facts

10. Citizens is a provider of primary care services to this community (catchment area) and has done so for the past thirty eight (38) years, the last eleven (11) of which include its co-applicant, Section 330 relationship with HHC. Citizens has received grants under Section 330 of the Public Health Service Act ("Section 330") to support the provision of such services from its health center located at 1650 College Avenue, Indianapolis, Indiana, 46205, as well as at the Barton Annex, located at 501 East Street, Indianapolis, Indiana, 46204. 42 U.S.C. § 254, *et seq.*

11. For more than eleven (11) years, Citizens and HHC applied for and received, as a co-applicant, funding based upon Citizens designation as a FQHC under Sections 330(e) and (i) and public housing, of the Act. HHC served as the grantee of record and was thereby, accountable to HRSA for management of the grant funds while Citizens provided the primary health care services designated in the grant.

Citizens and HHC memorialized their co-applicant relationship by several co-applicant agreements executed by and between the Citizens Board Chair or designee and the HHC Board, by Defendant Gutwein. The co-applicant agreements was published to and approved administratively by HRSA. The co-application made by Citizens and HHC was submitted to HRSA which resulted in Grant Award No.: # 6 H90CS00592-10-06.

The grant, at issue, is for a term of four (4) years expiring, by its terms, on or about February 28, 2016. A copy of the said grant award is attached hereto and incorporated herein, as Exhibit A. The co-applicant agreement, in effect between the parties at times relevant hereto, is attached hereto and incorporated herein, as Exhibit B.

12. Soon after the said grant award, HHC decided it wanted Citizens to be a part of its 'recently acquired and enhanced' Wishard Health Services which were created to specifically provide acute and primary health care services in competition with Citizens. HHC demanded that Citizens become a part of the HHC and thereby would become the beneficiary of the

existing FQHC status enjoyed by Citizens. Consistent with its plan to usurp Citizens' FQHC status and the grant opportunity, HHC breached the co-applicant agreement by attempting to make or place Citizens in a position that would force its buckling under to HHC or go out of business. In the said effort and breach of the agreement, HHC withdrew or severely reduced technical support to Citizens, made threats toward it and undertook increasingly punitive actions against Citizens especially following an August 18, 2011 meeting between the HHC and Citizens principals. During that meeting, Defendant Gutwein informed Citizens' principals of its intent to implement a change in Citizens' FQHC status, namely that Citizens acquiesce to HHC's complete takeover and the demise of the Indianapolis' first FQHC, its board, its place as a community stakeholder, its non-profit purpose, status, name, assets and good will.

13. Citizens rejected the HHC demand but made several counter proposals aimed at continuing the benefits and services provided by the grant until the expiration thereof, 2016, at which time Citizens would make application for the continuation of grant funds, or not, in its own name even if HHC was also an applicant to provide Section 330 services in the Citizens' catchment area.

The Secretary was made aware of the onset of and continuing grant status dispute, the aims of HHC and HHC's punitive actions against the co-grantee Citizens through reports and requests for assistance made by Citizens to HRSA.

On February 14, 2012, HHC unilaterally gave notice to HRSA indicating HHC's desire to relinquish the remaining benefit of the said grant.

14. Lula Journey as Chair and the members of the Citizens' Board made written objection to HRSA and requested administrative relief as is provided by the regulations authorized and required by the Act. The request for administrative due process restated Citizens'

unswerving commitment, desire and intent is to continue to provide 330 services to its area of our community through the instant grant term and into the future.

15,  HHS/HRSA informed Citizens that HHC was not required by the Secretary or regulations to provide a statutorily recognized reason for the interruption/termination of services to the catchment area served by Citizens or any other written reason or other justification for its inexplicable and surprise move to relinquish the grant.

HRSA was however aware of the facts including the stated position of HHC that the involuntary takeover of Citizens was necessary in order to increase HHC's income by some fifteen million dollars.  Even in that context and awareness, the Secretary refused and denied Citizens administrative relief or a due process hearing.

16.  HHC's and the Secretary's decision as rendered by HRSA has the significant and immediate impact not only upon Citizens name, reputation and goodwill, but more importantly on Citizens' continued and uninterrupted delivery of primary health care services - as was reasonably expected through the end of the grant period.  Citizens entered into the normal and necessary contracts and service agreements necessary for the implementation and delivery of services promised by the grant, necessarily relying upon the grant and the co-applicant agreement.

17.  Contrary to the relevant regulations requiring the Secretary to make such findings before she could terminate such a grant, did not require HHC's to demonstrate how its unilateral relinquishment of the grant would or may impact the constituency or need for the services in the catchment area or made any effort to determine if the actions of HHC undermined the very purpose and intent of the Act.  HRSA contrary to governing regulations did not seek to justify or to quantify the impact if any its action to approve the termination of the grant had or may have

on the mutual constituency or patient encounters served by Citizens or the provision of such services.

HHC was allowed to rely upon and was aided in the takeover effort by its relationship with HRSA, its commanding economic superiority to Citizens and its presumed right to terminate the services and win any future grant award for the catchment area by competing with a weakened if not out-of-business Citizens.  The latter, Citizens, having been placed in a severely weakened position, by HHC, to engage in such a bid by the conduct of HHC in violation of the terms of the grant and the co-applicant agreement or a loss of the value of the remaining four million dollars ($4,000,000.00) to our community.

18.  The Secretary, contrary to the provisions of the Act, denied Citizens any administrative relief and failed to act as is provided by the regulations promulgated by HHS pursuant to the Act and in such cases made and provided to all other recipients of Section 330 funding.

19.  Instead, the Secretary abrogated her duties and accepted HHC's unilateral termination of the grant or the relinquishment of the benefits (funds) thereof and issued a supersedes award (no. H80CS00592-10-07) to HHC for Citizens to continue the delivery of services called for therein without including Citizens' name thereon.  The supersedes grant will expire on November 30, 2012.

20.  The Secretary IS NOW in the process of issuing a new grant opportunity for bid to all eligible parties, including HHC, and will fill the same unless this Court acts to on this request for preliminary injunction.

21.  Citizens, had it enjoyed the benefit of due process [*e.g.*:  42 CFR § 50, Part D and § 51c, *et seq.*], would have been entitled to a hearing to determine its rights to the continuation of the original grant (as herein above identified), unless terminated for cause or by the said required

regulatory findings before exercising the authority, by the Secretary, and before HHC could terminate the grant.

22. The lack of or the denial of an administrative due process hearing is especially injurious to Citizens, where as in this case and circumstances, the regulatory provisions do not anticipate a voluntary termination of a grant.

### III. Causes of Action

#### a.

23. Plaintiff incorporates by reference paragraphs one (1) through twenty two (22) as if here fully restated.

24. Citizens wan never afforded notice or an opportunity to be heard before an impartial, fair, neutral, unbiased, disinterested tribunal, as provided and in such cases made by relevant regulations, in which it could have presented sworn testimony, cross examined witness against it or to present a defense or evidence in support of its position – maintaining the grant through its expiration as was its expectation, custom and practice.

25. Instead, Citizens was presented, without notice, an acceptance of the termination of the grant by HHC by a biased and prejudiced body; to wit: HHS/HRSA, decision makers of which had received complaints from Citizens and were particularly in a position to have stopped the grant violations committed intentionally by HHC, communicated with HHC, failed to exercise its regulatory authority becoming a party to and the enforcement of the decision to permit and facilitate the termination of the grant.

26. The actions of the Defendants resulted in the denial of due process to Plaintiff, the breach of the co-applicant agreement by HHC, the taking of Plaintiff's property or the benefit of the grant without a due process hearing and substantially harmed Citizens good standing, reputation and continued business opportunities.

27. As a direct result of the said actions and inactions of the Defendants, individually and in concert, Citizens has been denied its right to procedural due process of law as guaranteed it by law and the Constitution of the U. S.

b.

28. Plaintiff incorporates by reference paragraphs one (1) through twenty seven (27) as if here fully restated.

29. As a direct consequence of the actions and inactions of the Defendants, the Plaintiff has been denied (as it is currently) its right to substantive due process of law as guaranteed to them by the Constitution of the U. S.

c.

30. Plaintiff incorporates by reference paragraphs one (1) through twenty nine (29) as if here fully restated.

31. HHC, by its commissions and omissions, actions and inactions done intentionally, maliciously, purposely and knowingly, used its superior position in the grant process to violate and to breach the terms of its contract(s) or co-applicant agreement with Citizens.  HHC used its superior position to conspire to damage, injure and harm the Plaintiff by taking Citizens' interest in the extant grant, depriving Citizens of income, and by making Citizens the subject of public ridicule.

32. HHC has damaged Citizens reputation, good will and standing in an attempt to force its takeover or to deprive Citizens of its expected benefit from the extant grant from the time of the breach through and including the natural expiration date of the said grant.

33. Citizens has suffered and will continue to suffer losses in terms of income and to its reputation and good standing as a result of HHC's breach.

### III. Relief Sought

34. Citizens has and will continue to suffer hardship and actual and impending irreparable harm, injury and damages, because of the actions of the Defendants, in that it will suffer the loss a property interest in the grant, without due process of law, the loss of its standing, reputation and goodwill.

35. Neither Defendant nor Citizens or the constituency served by Citizens will be harmed by maintaining the status quo (grants awarded and in effect) until this matter may be resolved by the Court.

36. There is no adequate or speedy remedy available to Citizens at law that will enable it to avoid the harm to it that has and will result from the acts of the Defendants, thus this action for injunctive relief is Citizens only means of securing relief.

WHEREFORE, Citizens requests that the Court:

a. Issue a preliminary injunction pursuant to FRP, Rule 65, ordering Defendant Sebelius, HRSA and all those in active concert or participation with the Secretary not to issue, or to withhold any new opportunity for a grant to provide primary health care services to or for the catchment area now served by Citizens, pending the final hearing and determination of this action;

b. Issue a permanent injunction enjoining and restraining Defendant HHC and all those in active concert or participation with HHC from unilaterally or otherwise terminating the grant herein defined or bidding against Citizens for a grant to service the catchment area before February, 2016;

c. To order that Defendant Sebelius, HRSA and all those in active concert or participation with the Secretary continue the said grant to Citizens, through its stated termination date – February, 2016 – in the name of Citizens with direct

       supervision of the grant by HRSA, which is now accomplished by paper produced by Citizens going to HHC for submission to HRSA;

d. Enter judgment against the Defendants for Citizens actual losses, damages, disbursements and attorney fees incurred in the pursuit of this action, including punitive damages, such as are appropriate, to deter the Defendants from engaging in similar conduct in the future; and

e. For any and all other and further relief as is deemed appropriate.

Dated:  June 8, 2012

/S/ Aaron E. Haith
Aaron E. Haith  (7378-49)
Attorney for Plaintiff
151 N. Delaware Street, Suite 740
Indianapolis, IN  46204
Office:         317-634-3113
Facsimile:    317-634-2880
ahaith@sbcglobal.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon the Hon. Kathleen Sebelius, Secretary, HHS/HRSA, C/O Gen. Counsel, 200 Independence Ave., SW, Washington, DC  20201; James D. Minor, M.D., Health & Hospital Corp., 3838 N. Rural St., Suite 820, Indianapolis, IN  46205; Matthew Gutwein, Health & Hospital Corp., 3838 N. Rural St., Suite 820, Indianapolis, IN  46205; and upon Health & Hospital Corp., C/O Gen. Counsel, 3838 N. Rural St., Suite 820, Indianapolis, IN  46205, by depositing the same in the United States First Class Mail, postage prepaid, on this 8th day of June, 2010.

/S/ Aaron E. Haith
Aaron E. Haith  (7378-49)
Attorney for Plaintiff
151 N. Delaware Street, Suite 740
Indianapolis, IN  46204
Office:         317-634-3113
Facsimile:    317-634-2880
ahaith@sbcglobal.net