UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CITIZENS HEALTH CORPORATION, ] <br> ] <br> Plaintiff, ] <br> ] <br> vs. ] <br> ] <br> KATHLEEN SEBELIUS, SECRETARY, U. S. ] <br> DEPARTMENT OF HEALTH AND HUMAN ] <br> SERVICES, U. S. DEPARTMENT OF ] <br> HEALTH AND HUMAN, HEALTH RESOURCES] <br> ADMINSTRATION, JAMES D. MINOR, ] <br> M.D., CHAIR, BOARD OF TRUSTEES OF THE ] <br> HEALTH & HOSPITAL CORPORATION OF ] <br> MARION COUNTY, IN, MATTHEW GUTWEIN, ] <br> EXECUTIVE DIRECTOR, HEALTH & ] <br> HOSPITAL CORPORATION OF MARION ] <br> COUNTY, IN and HEALTH & HOSPITAL ] <br> CORPORATION OF MARION COUNTY, IN, ] <br> ] <br> Defendants. ] | Case No.: 1:12-cv-0748-SEB-TAB |

**MEMORANDUM IN SUPPORT OF PLAINTIFF
<u>CITIZENS' MOTION FOR PRELIMINARY INJUCTION</u>**

Citizens Health Corporation, by its counsel, submits the following in support of its Motion for Preliminary Injunction in order to preserve the status quo until such time as this matter may be fully resolved on the merits.

<u>I. Background</u>

Citizens Health Corporation ("Citizens") is a not-for-profit Indiana corporation with corporate offices at 1650 N. College Avenue, Indianapolis, IN 46202. Citizens is a provider of primary healthcare services to a very needy community (catchment area) in Indianapolis, as a Federally Qualified Health Center (FQHC). 42 U.S.C. 254(b), *et seq.* Citizens was founded by a group of African-American physicians, members of the Aesulapian Society, in or about 1968, to serve this primarily urban community in which many are at or below the Federal poverty level

and are largely minority. Citizens provided such primary care services, with the benefit of federal funding, until 2000 or 2001, without a co-applicant agreement. Due to managerial and some financial difficulties, Citizens and Defendant Health and Hospital Corporation ("HHC") jointly sought the Sec. 330 grant funds[1] for the Citizens catchment area as co-applicants. The resultant grants were issued in the name of HHC with Citizens as the designated entity for the ultimate delivery of public health services for the catchment area.

For the next eleven (11) to twelve (12) years, the parties acted as co-applicants with HHC administering the Section 330 grant funds from which Citizens provided primary health care services and a proportionate share of the cost of the operation of a health center located at 1650 College Avenue, Indianapolis, Indiana, 46205 as well as the Barton Annex, located at 501 East Street, Indianapolis, Indiana, 46204, including staffing. 42 U.S.C. 254, *et seq.* Citizens, HHC and Defendant HHS/HRSA memorialized their grant co-applicant relationship by the grant terms and the several co-applicant agreements executed by and between the Citizens Board Chair or designee and the HHC Board, by Defendant Gutwein or his predecessor in office. Such co-applicant agreements and applications, as recited below, were made pursuant to 42 U.S.C §254b, 42 CFR Part 51c, 42 CFR Parts 56.201-56.604, and 45 CFR Part 74. As also included in the recitals is a reference to the fact that Citizens and HHC had entered into the same or similar agreements and received grant awards since 2001. The agreement and its purpose states:

"**CO-APPLICANT AGREEMENT**

This Co-Applicant Agreement (hereinafter referred to as "Agreement") is entered into by and between Citizens Health Corporation (hereinafter referred to as "CHC"), an Indiana not-for-profit corporation, with its principal office located at 1650 North College Avenue, Indianapolis, Indiana, 46202 and the Health & Hospital Corporation of Marion County (hereinafter referred to as "HHC"), an Indiana municipal corporation with its principal offices located at 3838 North Rural Street, Indianapolis, Indiana, 46205, (hereinafter collectively referred to as the ("Parties").

---

[1] Section 330 of the Public Health Service Act, 42 U.S.C. 254, *et seq.*

## Recitals

**WHEREAS,** HHC is a municipal corporation created and empowered pursuant to I.C. 16-22-8-1, et. seq. that operates Wishard Health Services, the Marion County Public Health Department, and provides acute and primary health care services to all economic segments of the Marion County community, including Indianapolis;

**WHEREAS,** CHC is a nonprofit, charitable corporation, which has since 1974 operated as a community health center, with a federally qualified health center (hereinafter referred to as "FQHC") designation since 1994, that provides the full spectrum of primary and preventive health care and related services to medically underserved populations in the City of Indianapolis. In the past CHC has received grants under Section 330 of the Public Health Service Act (hereinafter referred to as "Section 330") to support the operation of a Primary Health Care Center (hereinafter referred to as "Health Center") located at 1650 College Avenue, Indianapolis, Indiana 46205 as well as the Barton Annex located at 501 East Street, Indianapolis, Indiana 46204;

**WHEREAS,** HHC operates numerous primary care clinics and has significant expertise and abilities relevant to health center management, including, but not limited to, billing and collections, human resources, marketing, information management, in-service professional training and management of medical records; and all aspects of management of primary care clinics;

**WHEREAS,** HHC and CHC have historically collaborated in providing high quality health services to the residents of the CHC service area, including HHC's provision of management support and technical and financial expertise services since 1995, and HHC's financial support of the substantial upgrading of CHC's physical facilities;

**WHEREAS,** to promote continuity of care in the service area currently served by CHC and to advance the respective missions and goals of CHC and HHC, the Parties find it to be in their best interest and the interests of the medically underserved and vulnerable populations of Marion County for HHC to apply for funding resulting in the designation of CHC as an FQHC under Sections 330(e) and (i) and public housing;

**WHEREAS,** CHC desires to avail itself of HHC's medical management expertise without compromising CHC's integrity, independence, autonomy and overall control of its operations;

**WHEREAS,** CHC and HHC want to ensure that the CHC provides training for its Board and staff that focuses on the operation of a FQHC Health Center and the key health center requirements as outlined in 42 U.S.C §254b, 42 CFR Part 51c, 42 CFR Parts 56.201-56.604, and 45 CFR Part 74; and

> **WHEREAS,** CHC and HHC have previously entered into four agreements to accomplish this purpose, Co-Applicant Agreement executed 2-28-01, Affiliation Agreement executed 1-1-01, Co-Applicant Services Agreement executed 10-28-03, and Co-Applicant Agreement executed 11-12-08. CHC and HHC enter into this Agreement for the purpose of combining the other agreements and rendering them null and void upon the execution of this Agreement.
>
> **NOW, THEREFORE,** in consideration of the promises and the mutual covenants set forth in this Agreement, the receipt and adequacy of which are acknowledged by the Parties to this Agreement, CHC and HHC hereby agree as follows: . . ."

*Exh. 1,* HHC Response to Complaint, pp. 2-3 (as filed).

The co-applicant agreements referenced in the co-applicant agreement of the same general character were not only published to but subject to and approved by HRSA grants staff as per applicable regulation in effect at the time[2]. The co-application made by Citizens and HHC was submitted to HRSA which resulted in the instant Grant Award No.: # 6 H90CS00592-10-06. The award of the grant was premised upon this co-applicant arrangement in order to satisfy the requirements necessary for the Secretary to approve the grant award pursuant to 42 CFR 51c.204[3].

---

[2] 42 CFR § 51c.302. Application.
To be approved by the Secretary under this subpart, an application for a grant must, in addition to meeting the requirements of § 51c.104 of subpart A,
(a) Be submitted by an entity which may be a co-applicant which the Secretary determines is a community health center, and
(b) Contain information sufficient to enable the Secretary to determine that the center will meet the requirements of § 51c.103.

[3] 42 CFR § 51c.204. Grant evaluation and award.
(a) Within the limits of funds determined by the Secretary to be available for such purpose, the Secretary may award grants under this subpart to applicants therefore which will, in his judgment, best promote the purposes of section 330(c) of the Act and the applicable regulations of this part, taking into account:
(1) The degree to which the proposed project satisfactorily provides for the elements set forth in § 51c.203 ;
(2) The relative need of the population to be served for the services to be provided;
(3) The administrative and management capability of the applicant;
(4) The potential of the project for development of new and effective methods for health services delivery and management;
(5) The soundness of the fiscal plan for assuring effective utilization of grant funds and maximizing non-grant revenue;
(6) The extent to which community resources will be utilized in the project;

The grant award contemplated Citizens providing the primary health care services and required of a FQHC pursuant to the award and could not be terminated by HHC or HRSA without the consent of Citizens. Citizens asserts it has the right to maintain the grant it has in place and that which it seeks to maintain by this action.

During the years here relevant, HRSA's policy or file supervisors oversaw the grant pass through requirements assumed by HHC and the delivery of primary healthcare services by Citizens, as the co-applicants received funding based upon Citizens designation as a FQHC under Sections 330(e) and (i) and public housing[4]. The entity/applicant, HHC and Citizens,

---

(7) The extent to which grants approved under this part will provide for an appropriate distribution of resources throughout the country, taking into consideration the following factors;
(i) The urban-rural area to be served;
(ii) The nature of the organization applying; and
(iii) The organizational structure for delivery of services;
(8) Whether the project's catchment area is exclusive of the area served by a community health center;
(9) The degree to which the applicant intends to integrate services supported by a grant under this subpart with health services provided under other Federally assisted health services or reimbursement programs or projects.
(b) The Secretary may:
(1) Make no more than two grants under this subpart for the same project.
(2) Make a grant under this subpart to an entity which has been awarded one or more grants under section 330(d)(1)(A) and/or section 330(d)(1)(B) of the Act only if the grant under this subpart is for a new project.

[4] 45 CFR 92.3 - Definitions.
*Administrative* requirements mean those matters common to grants in general, such as financial management, kinds and frequency of reports, and retention of records. These are distinguished from *programmatic* requirements, which concern matters that can be treated only on a program-by-program or grant-by-grant basis, such as kinds of activities that can be supported by grants under a particular program.
\* \* \*
*Recipient* means an organization receiving financial assistance directly from an HHS awarding agency to carry out a project or program. The term includes public and private institutions of higher education, public and private hospitals, commercial organizations, and other quasi-public and private nonprofit organizations such as, but not limited to, community action agencies, research institutes, educational associations, and health centers. The term may include foreign or international organizations (such as agencies of the United Nations) which are recipients, subrecipients, or contractors or subcontractors of recipients or subrecipients at the discretion of the HHS awarding agency. The term does not include government-owned contractor-operated facilities or research centers providing continued support for mission-oriented, large-scale programs that are government-owned or controlled, or are designated as federally-funded research and development centers. For entitlement programs listed at 45 CFR 92.4(a)(3), (a)(7), and (a)(8) "recipient" means the government to which an HHS awarding agency awards funds and which is accountable for the use of the funds provided. The recipient in this case is the entire legal entity even if only a particular component of the entity is designated in the award document.
\* \* \*
*Termination* means the cancellation of HHS awarding agency sponsorship, in whole or in part, under an agreement at any time prior to the date of completion. For the entitlement programs listed at 45 CFR 92.4 (a)(3), (a)(7), and (a)(8), "termination" shall have that meaning assigned at 45 CFR 92.3.

made application for the grant pursuant to 42 CFR § 51c.302(a)[5]. Within the application (co-applicants) Citizens was responsible for the program requirements as designated at 42 U.S.C §254b and HHC was responsible for programmatic management as has been envisioned by and between Citizens, the Secretary/HHS/HRSA and HHC as is evidenced by the award[6]. A copy of the said grant award is attached to Plaintiff's Complaint, as *Exh. A*.

The Secretary/HHS/HRSA was without the authority to terminate the grant award until and only if the applicant, or in this instance the entity Citizens/HHC, mutually agreed to terminate the grant. The regulations promulgated by HHS/HRSA or applicable to it required both parties to the entity or applicant to agree to termination[7]. Citizens never agreed to the termination and made its objection known to the Secretary/HHS/HRSA in a timely manner by seeking administrative relief and objected directly to HHC.

HHC presents its own copy of the co-applicant agreement relevant to this action as *Exh. 1*, to its Response to the Complaint. Citizens submitted the agreement for the interim and calls the Court's attention to the changes made between the two agreements as HHC sought to abandon its obligation under the award to both Citizens and HHS/HRSA.

---

[5] *ibid.* at f.n. 2.

[6] 45 CFR 74.2 0 Definitions.
*Award* means financial assistance that provides support or stimulation to accomplish a public purpose. Awards include grants and other agreements in the form of money or property in lieu of money, by the Federal Government to an eligible recipient. The term does not include: technical assistance, which provides services instead of money; other assistance in the form of loans, loan guarantees, interest subsidies, or insurance; direct payments of any kind to individuals; and, contracts which are required to be entered into and administered under Federal procurement laws and regulations.

[7] 45 CFR 74.2 - Definitions.
*Termination* means permanent withdrawal of the authority to obligate previously-awarded grant funds before that authority would otherwise expire. It also means the voluntary relinquishment of that authority by the grantee or subgrantee. "Termination" does not include: (1) Withdrawal of funds awarded on the basis of the grantee's underestimate of the unobligated balance in a prior period; (2) Withdrawal of the unobligated balance as of the expiration of a grant; (3) Refusal to extend a grant or award additional funds, to make a competing or noncompeting continuation, renewal, extension, or supplemental award; or (4) voiding of a grant upon determination that the award was obtained fraudulently, or was otherwise illegal or invalid from inception.

Soon after the said grant award, HHC, through greed and avarice of its principals, decided it wanted Citizens to become a part of its recently acquired or designated Wishard Health Services division. The new HHC formulation was created to specifically provide acute and primary health care services in competition with Citizens and other FQHC centers in Indianapolis such as Healthwise[8].

In its usurpation of the grant opportunity and breach of the co-applicant agreement, Gutwein/HHC demanded that Citizens acquiesce to HHC's complete takeover and the demise of the Indianapolis' first FQHC, its board, its place as a community stakeholder, its non-profit purpose, name, assets, goodwill and abandonment of the services provided to its dependent and needy catchment citizenry.

Citizens having sought administrative guidance and relief from HHS/HRSA from May, 2011 again sought their assistance – asking for relief at least through the term of the grant then in place. Locally, Citizens made several counter proposals aimed at continuing the benefits and services provided by the grant until the expiration thereof, at which time Citizens would make application for the continuation of grant funds, or not, in its own name even if HHC was an applicant to provide Section 330 services in the Citizens' catchment area.

The Secretary, though aware of the aims and actions of Gutwein/HHC, offered no substantive assistance through its policy division and the grants division was not heard from despite direct attempts to obtain the benefit of its engagement.

On February 14, 2012, HHC unilaterally gave notice to HRSA indicating HHC's desire to relinquish the remaining benefit of the said grant. Lula Journey as Chair and the members of the Citizens' Board made written objection to HHS/HRSA and requested administrative relief as is

---

[8] *See,* p. 3, Program Narrative, attached hereto as Plaintiff's Memorandum Exh. D.

provided by the regulations authorized and required by the Act. The request for administrative due process restated Citizens' unswerving commitment, desire and intent to continue to provide 330 services to its area of our community through the instant grant term and into the future.

Beyond a site visit and recommendations made concerning the delivery or services, HHS/HRSA did nothing to administratively resolve the complaint. HHS/HRSA eventually scheduled a telephonic meeting to discuss Citizens administrative remedies but demanded that Citizens not have the benefit of counsel during the conference.

The result, as policy staff or program staff (outside identification of the parties within HRSA or programmatic assignments were not easily identified) and perhaps the grants division staff, informed Citizens that it had no administrative appeal rights.

HHC was instructed by the Secretary/HRSA as to the steps necessary to provide a statutorily recognized reason for the interruption/termination of services to the catchment area served by Citizens or any other written reason or other justification for its move to relinquish the grant. More specifically, the Secretary/HRSA did not follow its own regulations in favoring HHC over Citizens. That advice from HRSA to HHS directly contravened the applicable regulation, 45 CFR 74.2 - Definitions (f.n. 7, *infra*) and thus further denied Citizens due process before accepting termination from the partner who only did the non-award acts while Citizens provided the services necessary to accomplish the public purpose of the award. HHC provided only technical assistance and other assistance to Citizens such as loans or landlord services. *See,* f.n. 7, *infra*, 45 CFR. 74.2 - Definitions.

Neither Defendant provided such counseling or alternative dispute resolution facilities to Citizens even when Citizens requested such relief in writing and by telephone. In its effort to help the Secretary/HHS/HRSA to understand its responsibilities and the remedies available to it,

Citizens referred the Secretary/HHS/HRSA to a FQHC operating in Utah which had suffered a similar breakdown with its dominant co-applicant. In that instance, it was reported the co-applicant relationship was terminated by the Secretary/HHS/HRSA with the provider of FQHC primary healthcare services retaining the award. The HHS/HRSA policy staff or program staff or grants division staff informed Citizens, essentially, that they were not aware of having provided such administrative relief to any grantee in Citizens' position and denied additional relief.

The Defendant's and the Secretary's decision as rendered by HRSA has the significant and immediate impact not only upon Citizens name, reputation and goodwill, but equally important to Citizens' continued and uninterrupted delivery of primary health care services to the underserved population within its catchment areas. Citizens entered into the normal and necessary contracts and service agreements necessary for the implementation and delivery of services promised by the grant, necessarily relying upon the grant and the co-applicant agreement.

Further, neither Defendant took notice of nor assessed the impact the combined act of termination would have on the constituency served by Citizens in the interim. Instead, Gutwein/HHC relied upon its apparent and dominant relationship with HRSA, its commanding economic superiority to Citizens and its presumed right to terminate the services and win any future grant award for the catchment area by competing with Citizens. The Secretary/HHS/HRSA combined with HHC to place Citizens in a severely weakened applicant position and to allow HHC to benefit from their combined denial of due process to Citizens.

Perhaps in recognition of the status in which the underserved population within Citizens catchment area, its own conduct programmatically, or its own duty not to abandon funding for

the catchment area, the Secretary/HHS/HRSA issued a supersedes grant, as identified in Plaintiff's Complaint. Further recognizing or denying its previous policy or the legal relationship existing among the parties over the last eleven (11) to twelve (12) years, the Secretary/HHS/HRSA issued the supersedes grant to the parties, in the same respective roles, but with Citizens name omitted from the notice of award. The act demonstrates the extent of bias shown to Citizens by the Secretary/HHS/HRSA, though the programmatic delivery of services remained the obligation of Citizens. The favored party, HHC, continues in the non-award position as the financial reporting agent for HHS/HRSA and in position to continue to harm and harass Citizens. This little act of obfuscation now exists though the delivery of services called for therein knowingly will be delivered or provided by Citizens[9]. The supersedes grant will expire on or before November 30, 2012.

## II. Nature of Action/Jurisdiction/Venue.

Plaintiff reasserts its basis for the jurisdiction of this Court over this controversy including its authority to enter the extraordinary relief prayed for and as is set forth in its <u>Amended Complaint</u>, at part II.

The Federal Defendants (Sebelius/HHS/HRSA) concede that this Court has jurisdiction but only to the extent of and under the provisions of the Administrative Procedures Act, 28 U.S.C. 1331. The Federal Defendants also deny the Court has jurisdiction to consider Plaintiff's claim for money damages from the said Federal Defendants which will be argued at a later date or stage of the litigation.

---

[9] *See*, Exh. A to Plaintiff's Complaint.

The Federal Defendants also assert the Plaintiffs' challenge to the Secretary's decision is only available pursuant the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702, 706, on an administrative record. Plaintiff disagrees.

Defendant HHC "denies that the Plaintiff has any basis for federal jurisdiction over them with the possible exception of 28 U.S.C. § 1367." Plaintiff asserts that HHC is subject to the same jurisdiction, by this Court, as is the Secretary/HHS/HRSA as it is an agent for purposes of the award in question[10]. HHC is subject to the jurisdiction of this Court as alleged in Plaintiff's Complaint.

### III. Exhaustion vs. Application of provisions of APA

Citizens has, it is undisputed, been denied the benefit of administrative due process [*e.g.*: 42 CFR Sec. 50, Part D and Sec. 51c, *et seq.*]. Had the Secretary/HHS/HRSA granted an administrative hearing, as was timely requested by Citizens, the orderly process envisioned by the regulatory scheme would have led to a hearing to determine Citizens' rights to the continuation of the grant and the removal of HHC as the administrator of non-award duties. Especially likely in this instance, where the grant was neither challenged for nor terminated for cause by the Secretary. Under the circumstances, the Secretary had a hearing or some process that the Secretary asserts was administrative due process as is evidenced by the purported, but incomplete, administrative record filed in this matter. Citizens was never notified of a hearing and the purported administrative record does not suggest either a hearing or notice of any hearing was even contemplated by the Defendants.

---

[10] 42 U.S.C. 254b. 4, "(o) Delegation of authority. The Secretary may delegate the authority to administer the programs authorized by this section to any office, except that the authority to enter into, modify, or issue approvals with respect to grants or contracts may be delegated only within the central office of the Health Resources and Services Administration."

If what is presented as an administrative record and a purported decision, then the Secretary improperly denied regulatory due process to Citizens and treated HHC more favorably in violation of the said regulatory process. Under the circumstance HHC could not terminate the grant legally. The Secretary acted in a manner inconsistent with the regulations regarding termination when it accepted the unilateral termination proffered by HHC.

> 45 CFR 74.2 – Definitions.
> *Termination* means the cancellation of HHS awarding agency sponsorship, in whole or in part, under an agreement at any time prior to the date of completion. For the entitlement programs listed at 45 CFR 92.4 (a)(3), (a)(7), and (a)(8), "termination" shall have that meaning assigned at 45 CFR 92.3.

> 45 DFR 92.3 – Definitions.
> *Grantee* means the government to which a grant is awarded and which is accountable for the use of the funds provided. *The grantee is the entire legal entity even if only a particular component of the entity is designated in the grant award document*. [Emphasis supplied].

By its own actions and in violation of the said regulations, the Secretary treated Citizens differently by removing administrative protections available and due to Citizens and by granting HHC relief not contemplated by either the enabling statute 42 U.S.C. 254, *et seq.* or by regulation. *See, e.g.*:

> 45 CFR § 92.6 - Additions and exceptions.
> (a) *For classes of grants and grantees subject to this part, Federal agencies may not impose additional administrative requirements except in codified regulations published in the Federal Register.*
> (b) Exceptions for classes of grants or grantees may be authorized only by OMB.
> (c) Exceptions on a case-by-case basis and for subgrantees may be authorized by the affected Federal agencies. [Emphasis supplied]

The Defendants inappropriately acted on chosen parts of the regulations that favored termination, disregarding the statute in most regards and parts thereof in isolation. However as the U.S. Supreme Court has opined, neither regulations nor statutes should be read as a series of unrelated and isolated provisions. *Gustafson* v. *Alloyd Co.*, 513 U.S. 561, 570, 115 S. Ct. 1061,

131 L. Ed. 2d 1 (1995). Yet, the Defendants combined to read or to misread the plain meaning of the regulatory procedure in such cases made and presented.

The Secretary is not entitled to now require Citizens to follow a crafted administrative procedure and any reasonable expectation of exhaustion of proscribed administrative remedies is no longer applicable or available under the circumstances of this case. The lack of faith is due to Defendants' purposeful or extremely negligent interpretation of its authority in its zeal to please and to show favor to HHC. The good faith delivery of a due process hearing is unattainable and Citizens should not be subjected to its administrative process without strict court supervision. "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice.*" *United States* v. *L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S. Ct. 67, 97 L. Ed. 54 (1952) [Emphasis supplied]. In this case the Defendants toppled over the administrative process and the decision rendered by it is contrary to law.

The Secretary cannot now afford Citizens substantive due process because it has already terminated the grant with which this action is concerned without authority and is now seeking, by applications for the catchment area, a new primary health care provider for which HHC is a candidate. "The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quotation omitted). There is no identifiable relief that the Secretary may grant to offer the relief to which Citizens was entitled or is willing to concede to rectify the wrong. *Martinez v. Matthews,* 544 f.2D 1233, 1242-44 (5th Cir. 1976).

Citizens has exhausted the prescribed administrative remedies provided and as interpreted by the Defendants – Citizens had none and got none. There is a real injury to its rights with no administrative remedy to avail itself of and is thus properly before this Court seeking judicial

relief. *Matthews, supra*; *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51, 58 S. Ct. 459, 82 L. Ed. 638 (1938). There are no administrative rules, in this case for the Court to "topple over" that should bar the application of the APA to this case. *United States* v. *L. A. Tucker Truck Lines, Inc.*, *supra*.

The lack of or the denial of an administrative due process hearing is especially injurious to Citizens, where as in this case and circumstances, the regulatory provisions do not anticipate a voluntary termination of a grant by one element of the applicant or by one of two co-applicants. 42 CFR 51c. 303(a), *infra*.

It has been observed by our Courts that proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings. *Woofford, et al.*, Petitioners v. Viet Mike Ngo, 548 U.S. 81, 91-92; 126 S. Ct. 2378; 165 L. Ed. 2d 368; 2006 U.S. LEXIS 4891. In order for that proscription to continue to be valid, it must also presume that the Secretary/HHS/HRSA follows some orderly administrative relief structure. The Secretary seeks to create rules for the administrative rights of Citizens on the fly and in a manner inconsistent with the APA, 5 U.S.C. 553, 554 and 554(d), as illustrated by the purported administrative record. The designated employee is chosen after the case has arrived at this Court and does not comport with the requirements of 28 U.S.C. 554 and attempts to act beyond the specific limitations to which the Secretary is allowed for the procedure for hearings established by 5 U.S.C. 554(d).

Under the circumstances, Citizens should not be compelled to enter into an exhaustive administrative process while the object of this action is bid away in violation of the rules of HHS/HRSA.

<u>IV. Defunding Citizens/Impact</u>

The parties agree that the grant sought to be preserved by Citizens has been terminated by the Defendants acts of commission and omission. All funds provided to Citizens per that award have been terminated and Citizens now operates pursuant to the supersedes grant, as previously explained, which by its terms terminate on November 30, 2012.

Citizens will effectively be closed and out of business unless this Court grants it the relief it now seeks. It will have to terminate its employees and close all branch services to Barton and other off site locations. Its ongoing business and clinical services will be destroyed. In *Canterbury Career School, Inc. v. Riley,* 833 F. Supp. 1097, 1105 (D.N.J. 1993), the Court reasoned, "Where the result of denying injunctive relief would be the destruction of an ongoing business, such result generally constitutes irreparable injury". Citizens submits that the defunding contemplated by the Defendants will put it out of business as it is known today.

The public interest would not be served by closing Citizens. As is outlined in the attached Affidavit of Lula Journey (Exh. A) and the attached Program Narrative (Exh. B), pp. 4-34, hereto, the need for the services provided by Citizens is critical, in short supply, and the community will see a greater need for primary health care services that is not now met by HHC or the extant FQHC or all the hospitals in the catchment area.

HHC will not be harmed by the grant of the relief here requested because it has not delivered the primary health care services supported by the grant and should not benefit from its own breach of its responsibility to Citizens, the Secretary or the community served by the award.

## V. Legal Standard

Citizens asserts that this is a matter in which the Court should exercise its power to issue a preliminary injunction because the situation presented clearly demand such action. *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F3d 380, 389 (7th Cir. 1984). Citizens has demonstrated (i) a likelihood of success on the merits, (ii) a lack of an adequate remedy at law and (iii) that

irreparable injury will occur if a preliminary injunction is not granted. *Reed L. v. Ill. State Bd. of Education,* 289 F.3d 1021 (7th Cir. 2002). On the factors suggested in the sliding scale, described in the opinion of the Court in *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc*., 549 F.3d 1079-1086 (7th Cir. 2008), the grant of the preliminary injunction should be entered in Citizens favor. The interests of the population and people of the catchment area would be harmed by the denial of the preliminary injunction.

The termination of the award or grant by the Secretary/HHS/HRSA violates the rules and regulations promulgated by the Secretary which is injurious to Citizens, and the action by the Defendants seeks to deny Citizens due process. The good will of Citizens and its continued relationship with its patients/clients will be irreparably injured by the conduct of the Defendants. The denial of due process in this instance may have a substantial impact on Citizens' ability to obtain grants or future consideration for funding from the Secretary because of this termination. This type of injury alone is sufficient for standing in order to seek the aid of this Court and the extraordinary relief requested. The Secretary is, by its actions, creating a stigma on Citizens that may prevent its future applications and is sufficient grounds for the grant of extraordinary relief. *See, e.g.: Canterbury Career School, Inc., supra; Southern Mutual Help Association, Inc. v. Califano, Sec. of HEW, et al.,* 574 F.2d 518, 523-534 (D.C. Cir. 1977). Such harm to Citizens is and will be irreparable.

In addition and for purposes of injunctive relief, an injury is also "irreparable" if it cannot be undone through monetary remedies. *Spiegel v. City of Houston*, 636 F.2d 997, 1002 (5th Cir. 1981); *Parks v.Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975). Monetary damages cannot compensate for "the loss of intangible rights that cannot be bought or sold in the marketplace." *Nobby Lobby, Inc. v. City of Dallas*, 767 F. Supp. 801, 821 (N.D. Tex. 1991); *see also Dearmore v. City of Garland*, 400 F. Supp.2d 894, 905 (N.D. Tex. 2005) ("[C]onstitutional violations

should be enjoined as soon as practicable; otherwise, the Constitution is of little value."). Therefore, no further showing of irreparable injury is necessary where a constitutional deprivation is involved or denial of due process is patently the intent of the Defendants. *See, e.g.: Louisiana Seafood Mgm't Council, Inc. v. Foster*, 917 F. Supp. 439, 442 n.1 (E.D. La. 1996) (quoting 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948:1, 160-61(1995)).

The likelihood of success on the merits also favors Citizens because the Defendants' actions, individually and jointly, were not pursuant to the applicable statute as herein above established. The Secretary improperly split the applicant to accept the desire and offer to terminate by HHC alone while knowing the application for the grant and its award was to a single grantee – Citizens and HHC as a single entity. *See*, 45 CFR 74.2 – Definitions, *infra* at f.n. 7, and 45 DFR 92.3 – Definitions, *infra*. In addition, the Secretary imposed differing administrative requirements upon Citizens that was not imposed on HHC in violation of 45 CFR § 92.6(a), *infra*. The Secretary must apply HHS/HRSA regulations as found and not by piecemeal and unequal application of the regulations to a specific entity – in this case Citizens. *See, Southern Mutual Help Association, supra* at p. 528.

Citizens has a reasonable likelihood of success on the merits on its wrongful termination argument as well as the inadequacy of the Secretary's regulations to timely remedy the wrong complained of in this action. The greater the likelihood of success, our Courts have reasoned, the less harm the moving party needs to show in order to obtain an injunction. *Girl Scouts of Manitou, supra*. at 1086.

The balance of hardships also tips heavily in favor of Citizens. Although this Court may deny an injunction that adversely affects the "public interest for whose impairment, even temporarily, an injunction bond cannot compensate," no such harm exists in this case. *Yakus v.*

*United States*, 321 U.S. 414, 440 (1944).  As described in the previous section, the harm to Citizens is real and immediate, but any injury claimed by Defendants from the issuance of the requested injunctive relief is speculative and unsupported by any rational evidence.  In fact, the harm, if any, to the Defendants is self inflicted and not the fault of either Citizens or the citizens who rely on the services resulting from the award.

VI. Conclusion

For the reasons stated above, Citizens respectfully request that the Court issue a preliminary injunction.  To the extent that Defendants dispute the factual allegations of Plaintiffs in this motion, Citizens request an opportunity to present evidence at the hearing to be held in this matter.

Respectfully Submitted,

/s/ Aaron E. Haith
Aaron E. Haith
151 N. Delaware St., Suite 740
Indianapolis, IN 46204

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been duly served upon all counsel of record via the Court's electronic filing system, on this 4th day of September, 2012.

/s/ Aaron E. Haith
Aaron E. Haith
151 N. Delaware St., Suite 740
Indianapolis, IN 46204


AARON E. HAITH (7378-49)
151 N. Delaware St., Suite 740
Indianapolis, IN 46204
(317) 634-3113
Fax: (317) 634-2880