UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CITIZENS HEALTH CORPORATION,<br><br>   Plaintiff,<br><br>vs.<br><br>KATHLEEN SEBELIUS, SECRETARY, U. S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, U. S. DEPARTMENT OF HEALTH AND HUMAN, HEALTH RESOURCES ADMINSTRATION, JAMES D. MINOR, M.D., CHAIR, BOARD OF TRUSTEES OF THE HEALTH & HOSPITAL CORPORATION OF MARION COUNTY, IN, MATTHEW GUTWEIN, EXECUTIVE DIRECTOR, HEALTH & HOSPITAL CORPORATION OF MARION COUNTY, IN and HEALTH & HOSPITAL CORPORATION OF MARION COUNTY, IN,<br><br>   Defendants. | Case No.: 1:12-cv-0748-SEB-TAB |

## Affidavit of Lula Journey

I, Lula Journey, under the penalties of perjury, make this affidavit based upon my own knowledge and belief:

1. That I am an adult person residing in Indianapolis, Marion County, IN and am currently the Chair of the Citizens Health Corporation Board of Directors having held this position or acted as a member of the said board at all times material to this action as is now pending in this Court.

2. That I am also a member of the Health and Hospital Corporation of Marion County, IN's ("HHC") Board of Trustees and have been a member of the said Board of Trustees at all times material to the present action.

3. That, as a member of the Citizens Board, I participated in all decisions respecting the co-applicant application for Section 330 funding and understood that both Citizens and HHC together constituted one grantee of any award granted to or in response to our co-applicant application.

4. That I was surprised by the actions of Matt Gutwein, HHC Executive Director, Gregory Porter, HHC Asst. E.D., and Dan Sellers, HHC Chief Financial Officer at a meeting called by Mr. Gutwein on August 18, 2011. In that meeting, Mr. Gutwein announced new plans for Citizens that were not consistent with the terms of the co-applicant agreement, the business arrangement then in place between the parties or the current grant award terms.

The HHC representatives advised that HHC needed the funds then available to Citizens by virtue of the award in order to manage HHC's expected and present budget shortfall. I, along with Gayle Godwin, Vice Chair of Citizens Board, and counsel, objected to the plan as outlined by HHC as well as their basis for concluding that Citizens would agree to become a part of HHC's organization. Counsel challenged HHC's authority to implement the changes announced. I advised that Citizens preferred to maintain the status quo until the expiration of the current grant award.

The Citizens representatives were told by Mr. Gutwein and his assistants that HHC was in charge of the grant and that it would be terminated with or without the consent of Citizens.

Thereafter, HHC's actions toward Citizens in the operation of the grant became more hostile and problematic.

Despite the problems generated by HHC, Citizens continued to operate, to improve its business model and to continue, with improvements, in the delivery of the primary health care services for which it was founded and had provided throughout the past thirty five (35) years.

5. That the decision, as announced by Mr. Gutwein, had not been discussed by him or his assistants at any meeting of the HHC Board of Trustees. My review of the published minutes of the Board of Trustees meeting reflects my advice to the Trustees that Citizens had engaged counsel in August, 2011. Mr. Gutwein did not allow for further discussion and did not inform the Trustees of his actions, at least during the public meetings.

I next heard of the matter, formerly and in a Trustees' meeting, when it was determined by Mr. Gutwein or others unknown to me, that the Trustees had to approve the termination of the award.

I was informed that HRSA only required the Trustees to approve the actions taken by Mr. Gutwein and his staff. HRSA confirmed this in writing to HHC staff with copies to Citizens. No other reference was made to the authority of HHC by HRSA staff despite Citizens' continuing objections to the actions approved by HRSA.

6. That prior to the need for Trustee approval of the termination, I met with Dr. Minor, Trustee Chair, as Chair of Citizens' Board, to discuss the termination and to seek his assistance. Dr. Minor advised that he was fully aware of the actions by Mr. Gutwein and staff and that he was in support of the actions though the same had not been addressed by or approved by the Board of Trustees.

Dr. Minor did not advise as to when he was made aware of the effort to consume Citizens or when he would bring the matter before the Trustees for discussion and consideration. It never

happened. The Trustees did later vote to ratify Mr. Gutwein and staff conduct with me abstaining as reported above.

I, as a Trustee, for twenty four (24) years, feel competent to speak of past practices and customs of the Trustee Board and our obligations under statute and its bylaws. I do not feel that Mr. Gutwein and staff's actions were authorized by the Board of Trustees, and I am of the opinion that Dr. Minor acted without the advice of the remaining Trustees respecting the approval of the efforts to bring about the demise or merger of Citizens. I am, further, of the opinion that both the actions of Mr. Gutwein and staff and that of Dr. Minor require prior Trustee Board approval and without such approval their actions were and are not enforceable as proper actions by the said board. Such conduct and actions taken in accord or resulting form their actions on behalf of Citizens and HHC should be considered null and void.

7. That I, as Chair, was and am authorized to take actions and steps deemed reasonably necessary to protect Citizens' interest in the award in place until January 16, 2012. At that time, over Citizens' objections and request for administrative review and assistance, HRSA advised that the award had been terminated. I wrote and called to protest the actions of HRSA and to request administrative relief.

Citizens' counsel and I arranged a telephone meeting with HRSA assigned staff to seek and arrange administrative relief, and for advice as to the administrative relief available to Citizens. After several continuances and rescheduling of the telephone conference, it was scheduled and held. However, HRSA, through a person identified as the HRSA general counsel, required Citizens' counsel to leave the room before the conference could continue. Citizens counsel was prepared with legal points to discuss with counsel for HRSA and we, lay members

of the board, were dependent on his advice and participation in the conference. Citizens was harmed by this action. (I noticed an apology letter to that effect in the documents produced by HRSA as an administrative record prepared by Ms. Bailey.)

After counsel was out of the room, the person identified as HRSA general counsel, said Citizens had no administrative right to protest the termination as the award was to and belonged to HHC solely. The person made no substantive response to the question of Citizens as a co-applicant and seemed aware of the meaning of co-applicant awards. No person contacted while we sought administrative review ever acknowledged Citizens status as a co-applicant or applicant.

On several occasions, I and others on behalf of Citizens, raised with the HRSA program and grants staff the fact that a similar situations as now faced by Citizens had occurred with a health care center and a hospital in Utah. I research the issue with the Utah facility and found the circumstance to be quite similar even down to the co-application, award and the hospital exercising its dominant position to force a merger as HHC was in the process of doing at that time. The result in Utah was that the center kept the award and the benefits thereof and a new system of reporting was enacted all with the direct assistance of HRSA staff.

8. That many of the letters I wrote seeking an audience, a voice or to state a position on the matter of termination both before and after January 16, 2012, are not included in the documents delivered to the Court as the Administrative Record. Ms. Bailey was hostile to both Citizens and Citizens' request for administrative relief, and, the record she put forth evidences that same bias as has been shown to HHC throughout this time period. The letters seeking administrative relief began in May, 2011 and were pretty consistent thereafter but Ms. Bailey

chose to leave those documents out of her record, if she maintained copies of the same. There were also many emails exchanged between the parties that are not included in Ms. Bailey's record but are important in the understanding of the chain of events or the administrative record.

All HRSA representatives who responded to Citizens' requests denied knowledge of the Utah precedent and re-asserted their position that Citizens had no voice or right to administrative review of the matter. HRSA never responded to any substantive complaint or several requests for technical assistance following its announcement of the termination.

Citizens turned the matter over to counsel and the Courts after all efforts to compromise with HHC and HRSA were met with stiff refusal and resistance. Citizens began to protect its position and to prepare for the possible bankruptcy of the corporation which would result if the award is not restored or replaced.

9. That in the process of preparing to seek the new award available for Citizens' catchment area, of which HHC is a competitor, Citizens employed Phillip Williams as a consultant to prepare the Program Narrative necessary for making application for the new award.

The document attached to Citizens argument in support of preliminary relief from the Court, marked as Exh. B is a true copy of his report. It is a document taken from the business records of Citizens and I am personally aware of the content and purpose of the document and as a business document taken from Citizens' files.

The Program Narrative accurately speaks to and outlines the need for primary health care services that remain unfulfilled in the area, and thereby how the population now served by Citizens will suffer or be injured by the absence of Citizens and the services it provides.

The unmet needs or the underserved will only become more acute if Citizens is no longer able to provide the services it now provides. Throughout the years of the co-applicant relationship, HHC offered the same services as it now offers as it seeks the new award for the area. However, the lack of penetration into the underserved population by HHC has been made less severe by the presence of Citizens. HHC's centers or look alike centers have generally failed and are not likely to improve in their ability to serve the population intended to be served by the grant.

Without Citizens in place as it is now, many of the medically underserved with be harmed by lack of accessibility, appointments that match transportation availability and in many other ways that are covered in the Program Narrative. Citizens would find it very difficult, if not impossible, to continue to operate as a medical center. A fact not lost but tossed at Citizens by Mr. Gutwein and staff to pressure Citizens to act in accord with his wishes.

Further affiant says not:

Lula Journey

Date: 9- 4- , 2012